# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRY EVANS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>RICHARD IVES,<br><br>　　　　　Respondent. | Case No. CV 16-04912 FMO (AFM)<br><br>**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Final Report and Recommendation is submitted to the Honorable Fernando M. Olguin, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

Petitioner, a federal inmate at the United States Penitentiary in Victorville, California, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241) with an attached Memorandum on July 5, 2016. Petitioner is serving a sentence of 1,020 months for a conviction he sustained in March 2000 in the United States District Court for the Eastern District of Missouri

for money laundering, conspiracy, and violations of the Mann Act, based on his participation in a prostitution ring. The crux of the Petition is that petitioner is actually innocent of money laundering, particularly in light of a Supreme Court decision issued after his conviction, *United States v. Santos*, 553 U.S. 507 (2008), which narrowed the term "proceeds" for purposes of the money laundering statute.

As discussed below, the Petition should be dismissed for lack of subject matter jurisdiction because a motion to contest the legality of a sentence generally must be filed in the sentencing court pursuant to 28 U.S.C. § 2255, and the narrow exception to the general rule does not apply here. Moreover, it would be inappropriate to transfer this action to any other court.

## PROCEDURAL HISTORY

The Court takes judicial notice of the relevant court documents from petitioner's prior criminal and habeas proceedings. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts).

In March 2000, petitioner and several codefendants were convicted in the United States District Court for the Eastern District of Missouri of crimes relating to the recruitment and transportation of individuals in interstate commerce for purposes of prostitution. Petitioner was convicted of conspiracy relating to interstate transportation of individuals for purposes of prostitution (Count 1), misuse of a Social Security number (Count 9), interstate transportation of a minor for purposes of prostitution (Counts 10, 12, 13), money laundering (Count 11), inducement of an individual to travel in interstate commerce for purposes of prostitution (Count 14), conspiracy to commit money laundering (Count 44), and criminal forfeiture (Count 45). He was sentenced to 1,020 months in federal prison. *See U.S.A. v. Evans*, 4:00-cr-00003-JCH-2 (E.D. Mo.), ECF Nos. 328-29, 425. In

November 2001, the Eighth Circuit Court of Appeals affirmed the judgment. *See United States v. Evans*, 272 F.3d 1069 (8th Cir. 2001).

In May 2003, petitioner filed a motion to vacate sentence under 28 U.S.C. § 2255 in the sentencing court, claiming ineffective assistance of counsel, among other claims. The motion was denied in May 2005. *See Evans v. U.S.A.*, 4:03-cv-00636-JCH (E.D. Mo.), ECF Nos. 1, 12.

In December 2009, petitioner filed a motion to reduce his sentence under 18 U.S.C. § 3582(c) in the sentencing court. It was denied in June 2010. In August 2010, the Eighth Circuit summarily affirmed the order denying relief. *See U.S.A. v. Evans*, 4:00-cr-00003-JCH-2, ECF Nos. 942, 957, 962.

In October 2013, petitioner filed a motion in the Eighth Circuit for permission to file a successive habeas petition under § 2255 in the sentencing court, based on alleged sentencing errors. It was denied in January 2014. *See Evans v. United States*, 13-3189 (8th Cir.), ECF No. 7.

Petitioner filed the instant Petition on July 5, 2016. Respondent filed a Motion to Dismiss the Petition on September 23, 2016. Petitioner did not file an Opposition within the allotted time or seek an extension of time to do so.

On November 29, 2016, the Court issued a Report and Recommendation recommending that the Petition be dismissed without prejudice for lack of subject matter jurisdiction. On December 22, 2016, petitioner filed Objections. Based on the substance of the Objections, the Court issues this Final Report and Recommendation, which does not change the initial recommendation but addresses a few of petitioner's points in the Objections.

**PETITIONER'S CLAIMS**

The Petition raises the following grounds for habeas relief:

1. Petitioner is actually innocent of money laundering in Count 11, particularly because of the Supreme Court's decision in *Santos*. (Petition at 3;

3

Petition Memorandum ["Petition Mem."] at 9-14.)

2. The evidence presented at trial was insufficient to support petitioner's conviction of conspiracy to commit money laundering in Count 44. (Petition Mem. at 14-17.)

3. The jury was erroneously instructed during petitioner's trial because it was not given the correct definition of "proceeds" and added an element of "coercion." (Petition Mem. at 17-26.)

4. Petitioner's sentence was substantially unreasonable compared to his codefendants' sentences and violated *United States v. Booker*, 543 U.S. 220 (2005). (Petition Mem. at 26-30.)

## LEGAL STANDARD

"Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008). "There is an exception, however, set forth in § 2255: A federal prisoner may file a habeas petition under § 2241 to challenge the legality of a sentence when the prisoner's remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'" *Id.* (*quoting* 28 U.S.C. § 2255). "We refer to this section of § 2255 as the 'savings clause,' or the 'escape hatch.'" *Id.* (citation omitted).

A § 2241 petition may be brought under § 2255's "savings clause" or "escape hatch" when a petitioner (1) makes a claim of actual innocence, and (2) has not had an "unobstructed procedural shot" at presenting that claim. *See Harrison*, 519 F.3d at 959; *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006). A petitioner must satisfy both requirements to invoke the savings clause. *See Stephens*, 464 F.3d at 898-99 (savings clause was inapplicable solely because of petitioner's failure to make a claim of actual innocence).

4

Further, a claim of actual innocence for purposes of the savings clause of § 2255 is tested by the standard articulated by the Supreme Court in *Bousley v. United States*, 523 U.S. 614 (1998) − i.e., the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Stephens*, 464 F.3d at 898 (*citing Bousley*, 523 U.S. at 623); *see also Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000).

## DISCUSSION

### A. Ground One does not qualify for the savings clause.

In Ground One, petitioner claims that he is actually innocent of the money laundering offense in Count 11, particularly in light of the Supreme Court's decision in *Santos*. (Petition Mem. at 9-14.)

At the time of petitioner's trial, the money laundering statute, 18 U.S.C. § 1956 (a)(1), stated in pertinent part (emphasis added):

> Whoever, knowing that the property involved in a financial transaction represents the *proceeds* of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the *proceeds* of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

In *Santos*, 553 U.S. at 510, the Supreme Court considered whether the term "proceeds," which was not explicitly defined in the money laundering statute, meant profits or receipts. Five justices in *Santos* (composed of a four-justice plurality and a one-justice concurrence) concluded that, in the specific case of money laundering from an illegal lottery, the rule of lenity required the term

"proceeds" to be interpreted as profits rather than receipts. *See Santos*, 553 U.S. at 514 (plurality op. of Scalia, J.); 553 U.S. at 528 (concurring op. of Stevens, J.).

After *Santos* was decided, Congress amended the money laundering statute in 2009 to define "proceeds" as receipts. This amendment is not retroactive, however, so it does not dispose of petitioner's *Santos* challenge to his 2000 conviction. *See United States v. Grasso*, 724 F.3d 1077, 1091-92 (9th Cir. 2013).

Petitioner was convicted of money laundering in Count 11 because he used some of the money generated from prostitution activity to buy a 1987 Mercury Topaz. *See Evans*, 272 F.3d at 1082. He argues that he is actually innocent of the money laundering offense because, under *Santos*, the Topaz was a business expense (for transporting a prostitute) which he purchased with receipts rather than profits. (Petition Mem. at 9-10.)

Assuming without deciding that petitioner did purchase the Topaz with receipts from prostitution activity, petitioner's reliance on *Santos* still is misplaced. No opinion in *Santos* commanded a majority of votes, so the holding is limited to the narrowest grounds supporting the result. *See Marks v. United States*, 430 U.S. 188, 193 (1977). The Ninth Circuit has held that the only issue uniting five justices in *Santos* was the desire to avoid a "merger problem." *See United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) ("Only the desire to avoid a 'merger problem' united the five justices [in *Santos*].").

Five justices in *Santos* found a merger problem in the specific context of money laundering from an illegal lottery: "If 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries would 'merge' with the money-laundering statute." *See Santos*, 553 U.S. at 515-56 (plurality op. of Scalia, J.); *see also id.* at 527 (money laundering from an

6

illegal gambling business "runs squarely into what can be characterized as the 'merger' problem") (concurring op. of Stevens, J.). Accordingly, "the holding that commanded five votes in *Santos*" is that "proceeds means profits where viewing proceeds as receipts would present a merger problem of the kind that troubled the plurality and concurrence in *Santos*." *See Van Alstyne*, 584 F.3d at 814 (internal quotation marks omitted).

The Ninth Circuit has identified three factors to consider in determining whether a merger problem under *Santos* exists: (1) whether a given transaction was a "central component" of the underlying scheme; (2) whether the money laundering charges led to a radical increase in the statutory maximum for the underlying offense; and (3) whether the money involved transfers among co-conspirators. *See Grasso*, 724 F.3d at 1092-93. Based on the weight of these factors, no merger problem existed in this case.

### 1. *Grasso* factors with respect to Ground One.

Under the first factor identified in *Grasso*, petitioner's purchase of the Mercury Topaz, for purposes of Count 11, was not a central component of the underlying scheme of interstate prostitution. According to court records and the Eighth Circuit's opinion on direct appeal, petitioner participated in a wide-ranging prostitution ring which started in the early 1980s, involved the transportation and use of several prostitutes through several states and Canada, and was operated by several defendants for two decades. *See Evans*, 272 F.3d at 1077; *see also Evans*, 13-3189, ECF No. 3. Petitioner purchased the Topaz in 1997, near the end of the scheme, with $1,000 that one of his prostitutes gave him from her earnings, and he drove it only within the state of Missouri. *See Evans*, 272 F.3d at 1080; Petition Mem. at 11. Although petitioner alleges that he purchased the Topaz to transport the prostitute who gave him the money to buy it (Petition Mem. at 9-10), this supposed "business reason" did not render the purchase of the Topaz a central

component of the prostitution ring. *See Grasso*, 724 F.3d at 1095 (finding no merger problem where the scheme "operated successfully for several years" before the money laundering); *United States v. Bush*, 626 F.3d 527, 538 (9th Cir. 2010) (same where the defendant had "operated his scheme for several years" before the money laundering).

In his Objections, petitioner again contends that the purchase of a Mercury Topaz was "central" because he used it only to transport one of his prostitutes, Eleana Garcia, to her prostitution calls. (Objections at 10, 16-19.) As discussed above, however, the purchase of the Topaz was not central to the overall prostitution ring, which spanned almost two decades, was conducted in several states and Canada, and involved several prostitutes other than Garcia. Moreover, as detailed by the Eighth Circuit's opinion on direct appeal, *United States v. Evans*, 272 F.3d 1069, 1083 (8th Cir. 2001), many of petitioner's offenses relating to the underlying prostitution ring involved several prostitutes other than Ms. Garcia and had nothing to do with the Topaz:

> In the course of promoting prostitution, [petitioner] traveled with and stayed in hotels with other defendants. In addition, Ms. Garcia testified that she received referrals for prostitution from Tonya May, one of LeVorn Evans's prostitutes, and that she and Ms. May participated in "two-girl calls," in which they engaged in sex for money and shared the proceeds. Ms. May and Julia Wilson, one of Monroe Evans's prostitutes, testified that they drove Ms. Garcia on prostitution calls. Finally, Deanna Kirkman, one of Terrance Roberts's prostitutes, testified that, following Ms. Wilson's arrest on state charges of prostitution, she witnessed a meeting involving all of the defendants concerning a statement that Ms. Wilson had made implicating the defendants. This evidence suffices to uphold [petitioner's] conviction of conspiracy to violate the Mann Act.

. . . .

> Latoya Madison, an acquaintance of Ms. Garcia, testified that she took a message to [petitioner]. After arriving to deliver the message, she was directed to a back room, where [petitioner] asked her if she would work for him as a prostitute. When she refused, he had her raped by three men, after which he again asked if she would work for him. When she again refused, he said that he would have people continue to rape her until she agreed.
>
> . . . .
>
> [Petitioner] misconstrues this testimony as character evidence to be evaluated under Rule 404(b) when, in fact, it is direct evidence of the Mann Act violations and the conspiracy. The rape — along with various other violent acts introduced into evidence — were actions taken to recruit, control, and discipline prostitutes.

In light of these facts reflecting petitioner's participation in a wide-ranging prostitution ring, the Court continues to find that petitioner's conviction of money laundering in Count 11, based on his purchase of the Mercury Topaz to transport Ms. Garcia on her prostitution calls, presented no merger problem under *Santos*.

In his Objections, petitioner clearly argues for the first time that that his conviction of conspiracy to commit money laundering in *Count 44* also presented a merger problem under *Santos*. (Objections at 21-23.) In his initial Petition, petitioner's *Santos* argument was directed to Count 11. Petitioner had the ability and opportunity to raise his specific allegations as to his *Santos* claim for Count 44 in the Petition, but he failed to do so. The Court therefore need not address this argument as to Count 44. *See United States v. Howell*, 231 F.3d 615, 623 (9th Cir. 2000) (factual allegations that are fleshed out in detail for the first time in

objections to the magistrate judge's report and recommendation need not be addressed).

But in any event, petitioner's conviction of money-laundering conspiracy in Count 44 presented no merger problem under *Santos* for the same reasons that Count 11 presented no merger problem. The factual basis of Count 44 was petitioner's conspiracy with Ms. Garcia to launder her prostitution earnings in order to pay for not only the Mercury Topaz, but also other expenses for Ms. Garcia, such as motel rooms, escort agency fees, and advertisements. (Objections at 22-23.) *See also Evans*, 272 F.3d at 1082. These purchases were not a central component of petitioner's participation in the underlying prostitution scheme which, as detailed above, substantially involved prostitutes other than Ms. Garcia and acts other than the promotion of her prostitution activity.

In sum, petitioner's purchase of the Mercury Topaz and payment of other expenses for Ms. Garcia's prostitution activity, so as to support his convictions of Counts 11 and 44, were not central to the overall prostitution scheme within the meaning of the first factor identified in *Grasso*.

Under the second factor identified in *Grasso*, the inclusion of the money laundering charges did not threaten a radical increase in the statutory maximum sentence for petitioner's underlying offenses. According to the Eighth Circuit's opinion on direct appeal, the statutory maximum for petitioner's crimes of conviction was 1,020 months. *See Evans*, 272 F.3d at 1077. Of this total, 540 months was for six underlying offenses relating to the operation of a prostitution ring, while 240 months was for money laundering.[1] *See Evans*, 4:03-cv-00636-

---

[1] Specifically, petitioner's sentence was calculated as follows: 240 months for money laundering (Count 11); 240 months for conspiracy to commit money laundering (Count 44); 60 months for conspiracy relating to interstate transportation of individuals for purpose of prostitution (Count 1); 60 months for misuse of a Social Security number (Count 9); 60 months for inducement of an individual to travel in interstate commerce for purpose of prostitution (Count 14); and 120 months for each of three counts of interstate transportation of a minor for purpose of prostitution (Counts 10, 12, 13). *See Evans*, 4:03-cv-00636-JCH, ECF No. 12 at 2.

JCH, ECF No. 12 at 2. The statutory maximum of 540 months for the underlying offenses was not radically less than, but rather exceeded, the 240 months for money laundering. Indeed, the statutory maximum for the underlying offenses also exceeded the 480 months for *both* money laundering crimes. *See Grasso*, 724 F.3d at 1092 (second "merger" factor applies only when the statutory maximum for the underlying crimes is "radically less" than that for the money laundering offenses).

Under the third factor identified in *Grasso*, the money used to buy the Topaz appeared to be the result of a transfer among co-conspirators and therefore, the money arguably constituted "proceeds" from the prostitution scheme within the meaning of the money laundering statute. As the Eighth Circuit found on petitioner's direct appeal, the prostitute who gave petitioner the money to buy the Topaz was petitioner's co-conspirator with respect to the handling of the money earned from the underlying prostitution scheme. *See Evans*, 272 F.3d at 1082. Although the Ninth Circuit has not explained this factor at great length or explicitly applied it to money laundering with underlying schemes involving prostitution, it has extended the co-conspirator factor to money laundering with underlying schemes involving the sale of contraband, fraud, and bribery. *See Grasso*, 724 F.3d at 1093-94 (citing *United States v. Webster*, 623 F.3d 901, 906 (9th Cir. 2010); and *United States v. Wilkes*, 662 F.3d 524, 548-49 (9th Cir. 2011)). Assuming that this third factor could be applicable to the underlying scheme in this case, it would militate toward finding no merger problem. In any event, the first two factors also strongly weigh against a merger problem.

In sum, the weight of the factors identified in *Grasso*, particularly the first and second factors, leads to the conclusion that there is no merger problem under *Santos*. Petitioner therefore does not qualify for the savings clause of § 2255 on this basis. *See Gamboa v. Norwood*, 380 F. App'x 613, 614 (9th Cir. 2010) (savings clause was inapplicable where petitioner's conviction for money laundering did not raise a merger problem under *Santos*).

**2. Additional arguments with respect to Ground One.**

Relatedly, petitioner contends that he is actually innocent of money laundering in Count 11 because he did not purchase the Topaz in order to "conceal" the prostitution activity, as generally would occur in money laundering transactions. (Petition Mem. at 13-14) This argument is misplaced because petitioner was not convicted of "concealment" money laundering under 18 U.S.C. § 1956 (a)(1)(B)(i), but rather was convicted of "promotional" money laundering under § 1956 (a)(1)(A)(i.). *See Evans*, 4:03-cv-00636-JCH, ECF No. 12 at 1. "Promotional money laundering is 'different from traditional money laundering because the criminalized act is the reinvestment of illegal proceeds rather than the concealment of those proceeds.'" *Wilkes*, 662 F.3d at 548 (quoting *United States v. Jolivet*, 224 F.3d 902, 909 (8th Cir. 2000)). Petitioner therefore has not raised a cognizable claim of actual innocence on this basis.

In his Objections, petitioner further contends that the savings clause applies because, under the second prong of the savings clause, he did not have an "unobstructed procedural shot" at raising his *Santos* claim in the sentencing court. (Objections at 9.) The Court need not make any finding as to this issue. Petitioner's claim in Ground One does not qualify for the savings clause solely because petitioner had failed to raise a claim of actual innocence. *See Stephens*, 464 F.3d at 898-99 (savings clause was inapplicable solely because of petitioner's failure to make a claim of actual innocence).

**B. Grounds Two to Four do not qualify for the savings clause.**

None of petitioner's remaining claims in Grounds Two to Four of the Petition qualifies for the savings clause of § 2255.

In Ground Two, petitioner claims that the evidence presented at trial was insufficient to support his conviction of conspiracy to commit money laundering in Count 44. (Petition Mem. at 14-17.) However, an insufficiency-of-the-evidence

claim fails to raise a claim of actual innocence within the meaning of the savings clause. *See Bousley*, 523 U.S. at 624 ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."). Moreover, petitioner cannot claim that he did not have an unobstructed procedural shot at raising this claim because he did in fact raise this claim on direct appeal, and the Eighth Circuit rejected it. *See Evans*, 272 F.3d at 1082-83.

In Ground Three, petitioner claims instructional error because (a) the jury was not instructed on the definition of the term "proceeds" consistent with *Santos*; and (b) the jury instructions added an element of "coercion" to the Mann Act offenses that was not included in the indictment. (Petition Mem. at 17-26.) The first part of this claim, premised on petitioner's argument under *Santos*, is foreclosed by the Court's findings above. *See United States v. Phillips*, 704 F.3d 754, 766 (9th Cir. 2012) (instructional error claim based on *Santos* was foreclosed where no merger problem existed).

The second part of this claim is insufficient to raise a claim of actual innocence within the meaning of the savings clause. *See Stephens*, 464 F.3d at 899 ("[T]he mere fact of an improper instruction is not sufficient to meet the test for actual innocence"). Moreover, petitioner cannot claim that he did not have an unobstructed procedural shot at raising this second part of the claim because it appears that he did in fact raise a variation of this claim in his § 2255 proceeding, and it was rejected. *See Evans*, 4:03-cv-00636-JCH, ECF No. 12 at 15. In any event, nothing would have prevented petitioner from raising this claim in a timely manner in the sentencing court. *See Ivy v. Pontesso*, 328 F.3d 1057, 1060 (9th Cir. 2003) (to show that he was denied an "unobstructed procedural shot," a habeas petitioner must demonstrate that he never had the opportunity to raise the claim by motion).

In Ground Four, petitioner claims that the trial court committed sentencing error by imposing a sentence that was harsher than what his codefendants received

13

and by applying the Sentencing Guidelines in violation of *United States v. Booker*, 543 U.S. 220 (2005). (Petition Mem. at 26-30.) Petitioner's claims of sentencing error have nothing to do with his factual innocence of the crimes of conviction and therefore are also insufficient to invoke the savings clause. *See Padilla v. United States*, 416 F.3d 424, 427 (5th Cir. 2005) (claim of *Booker* error is insufficient to invoke the savings clause); *see also Marrero v. Ives*, 682 F.3d 1190, 1193-94 (9th Cir. 2012) (claim of improper classification as a career offender under the Sentencing Guidelines fails to raise a cognizable claim of actual innocence, and citing cases holding that claims of noncapital sentencing error do not qualify for the savings clause). Petitioner would not be entitled to relief under *Booker* in any event because *Booker* does not apply retroactively on collateral review to convictions that were final when it was decided. *See United States v. Cruz,* 423 F.3d 1119, 1120-21 (9th Cir. 2005). Moreover, petitioner cannot claim that he did not have an unobstructed procedural shot at raising this claim because he did in fact raise a variation of this sentencing-error claim in his § 2255 proceeding, and it was rejected. *See Evans*, 4:03-cv-00636-JCH, ECF No. 12 at 14-15.

### C. Transfer of this action is inappropriate.

The only remaining question is whether this action should be transferred to any other court in which the action could have been brought. *See* 28 U.S.C. § 1631. "Because the statute's language is mandatory, federal courts should consider transfer without motion by the parties." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001). "Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Id.*

Here, the interests of justice would not be served by transferring this action to any other court. Petitioner previously filed a § 2255 petition in the sentencing

14

court, and he could not meet the requirements to obtain permission to file a successive § 2255 petition there. Under 28 U.S.C. § 2255(h), a second or successive motion by petitioner would have to be certified by the Eighth Circuit to "contain (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Neither requirement is met here. Petitioner has not submitted any newly discovered evidence of his actual innocence. Moreover, *Santos* is not a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. *See Prost v. Anderson*, 636 F.3d 578, 581 (10th Cir. 2010) (noting that a *Santos* claim would not meet the requirements for a successive petition under § 2255(h)); *Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012) (same).[2]

In any event, the Eighth Circuit has interpreted *Santos* narrowly so that it would not apply to petitioner's case: Because petitioner's underlying offenses based on the prostitution ring were distinct from and did not require the money laundering offense, no merger problem would arise. *See United States v. Rubashkin*, 655 F.3d 849, 866-67 (8th Cir. 2011) (finding no merger problem under *Santos* where the underlying offense of making false statements to a bank was a

---

[2] Although *Santos* did not announce a new rule of constitutional law for purposes of § 2255(h), it did substantively change the reach of the federal money laundering statute. *See Wooten*, 677 F.3d at 308 (*Santos* did not provide a basis for a successive petition under § 2255(h), but it did provide a new interpretation of the money laundering statute); *Garland v. Roy*, 615 F.3d 391, 397 (5th Cir. 2010) (describing *Santos* as a "substantive, non-constitutional decision[s] concerning the reach of a federal statute") (citations omitted). Accordingly, *Santos* is relevant to determine whether petitioner's claim may proceed under the savings clause of § 2255 on the ground that he is actually innocent of a violation of the "laws of the United States," but it is unavailable as a new rule of constitutional law for purposes of filing a successive petition under § 2255(h). *See Davis v. United States*, 417 U.S. 333, 343-46 (1974) (challenge under § 2255 that is grounded not in the Constitution, but on a violation of the "laws of the United States," is permissible).

"distinct offense compared to money laundering" and "did not require the types of payments which gave rise to the money laundering charges"). In other words, the money laundering was "not essential to his overall scheme in the same way" as in *Santos* and similar cases. *See id.* at 867.

Moreover, petitioner's non-*Santos* arguments already have been rejected by the sentencing court and the Eighth Circuit, as noted above. *See Puri v. Gonzales*, 464 F.3d 1038, 1043 (9th Cir. 2006) (declining to transfer action that was previously dismissed by transferee court, and noting that a transfer request would be an attempt to circumvent the earlier order of dismissal). In sum, transfer of this action is inappropriate. *See Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) ("Transfer is also improper where the plaintiff fails to make a prima facie showing of a right to relief, because the interests of justice would not be served by transfer of such a case.").

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; (2) granting respondent's Motion to Dismiss; and (3) directing that Judgment be entered dismissing this action without prejudice for lack of subject matter jurisdiction.

DATED: January 4, 2017

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE